UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| KYLE WAYNE BRASHEAR, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | Case No. 1:14CV00176 AGF |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Kyle Wayne Brashear's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Petitioner pled guilty to a drug offense and to possession of a firearm as a felon, and was sentenced to 151 months' imprisonment. Petitioner now claims that his counsel was ineffective by (1) failing to provide him with the evidence against him obtained during discovery; (2) failing to fully explain the pretrial waiver process with the result that he did not knowingly waive his right to challenge evidence against him, at an evidentiary hearing; and (3) making false promises enticing him into pleading guilty. For the reasons set forth below, the motion shall be denied.

## BACKGROUND

On November 24, 2013, police attempted to stop a vehicle driven by Petitioner after getting a report that he had shoplifted a stereo speaker from a Walmart store. Petitioner fled from police at speeds up to 100 miles per hour until his car was stopped by a spike strip deployed by the Highway Patrol. Petitioner fled on foot and was

apprehended after entering a relative's residence. Inside the vehicle, police saw in plain view a .25 caliber pistol, a bag of marijuana, and a number of articles used in the manufacturing and sale of methamphetamine. Petitioner waived his Miranda rights and admitted that the items were his, and that he had also been in possession of two grams of methamphetamine during the chase, which he ingested to prevent its recovery. Petitioner admitted that he both purchased and resold methamphetamine, and indicated that he had sold over 19 ounces of methamphetamine while on parole, since being released from shock incarceration five months prior.

On February 20, 2014, Petitioner was indicted on three counts: attempt to manufacture methamphetamine (Count 1); being a felon in possession of a firearm (Count 2); and possession of a firearm in furtherance of a drug trafficking crime (Count 3). Petitioner made an initial appearance on March 12, 2014, and an Assistant Federal Public Defender was appointed to represent him. Petitioner waived the reading of the indictment and entered an initial plea of not guilty.

On March 26, 2014, Petitioner's counsel filed Petitioner's statement regarding pretrial motions, which stated that Petitioner had been provided with the discovery against him, had reviewed it with counsel, and had decided to waive his pretrial motions. (Case No. 1:14CR00003 AGF/SPM, Doc. No. 21.) On April 10, 2014, Petitioner appeared before a magistrate judge for a hearing on his waiver of pretrial motions. Petitioner was placed under oath and questioned by the court regarding his intent to waive his pretrial motions. The court explained to Petitioner that he would be giving up his right to have an evidentiary hearing at which he could challenge the admissibility of

the evidence against him. The following exchange then ensued:

> Court: What you won't be able to do after today if I accept your waiver is to have certain motions filed on your behalf that you would otherwise be entitled to bring before trial. That's why we call them "pretrial motions."
>
> So, for example, all the evidence the Government plans to use against you at trial must have been acquired lawfully, and one of the things that pretrial motions will help to ensure is that your constitutional rights are protected.
>
> So if you and your attorney believed that some of the evidence the Government plans to use at trial was not obtained lawfully, you would have the right to file a motion asking the Court to suppress all or some of that evidence.
>
> If the evidence is suppressed, then the Government would not be allowed to use that evidence against you at trial. Do you understand that?
>
> Petitioner: Yes, ma'am.
>
> Court: And do you feel as if you've had enough time to talk to your attorney about your case and about pretrial motions?
>
> Petitioner: Yes.
>
> Court: Okay. Now, if pretrial motions are filed such as a motion asking the Court to suppress the evidence, then you would have a right to a hearing on that motion, an evidentiary hearing, and that hearing would be in front of me, and I would hear testimony from witnesses and get other information from both sides, and then I would ultimately make a decision recommending to your trial judge whether or not to admit the evidence at trial. Do you understand that?
>
> Petitioner: Yes, ma'am.
>
> Court: Okay. Now, you understand that [Petitioner's counsel] has advised the Court that he's received discovery from the Government and he's reviewed that with you. So you have an understanding of the nature of the evidence the Government has against you in your case; is that correct?

| | |
|---|---|
| Petitioner: | Yes. |
| Court: | And with that understanding and after talking it over with your attorney, is it your choice and your understanding that it's in your interest in this case to waive or give up your right to have pretrial motions filed on your behalf? |
| Petitioner: | Yes, it is. |

. . .

| | |
|---|---|
| Court: | Okay. You understand that without filing pretrial motions, if you don't file pretrial motions, there's nothing for me to have a hearing on; so by waiving or giving up your right to have pretrial motions filed, you're also giving up any right you would have to an evidentiary hearing on those motions. You do understand that, don't you? |
| Petitioner: | Yes, ma'am. |

*Id.*, Doc. No. 24 at 3-5.

Petitioner was told that his decision to waive pretrial motions would be final and that he would not be able to have an evidentiary hearing nor claim that his rights had been violated in that respect. The Court then asked Petitioner whether he had been threatened or induced by promises to waive his rights to pretrial motions.

| | |
|---|---|
| Court: | Okay. Now, did anyone threaten you or beat you up to get you to give up your right to have pretrial motions filed on your behalf? |
| Petitioner: | No, ma'am. |
| Court: | Did anyone promise to give you anything in exchange for your giving up your right to have pretrial motions filed in this case? |
| Petitioner: | No. |

> Court: All right. Very good. I do accept your waivers. I find that you've made them knowingly, voluntarily, and intelligently . . . .

*Id*. at 6-7.

Petitioner thereafter filed a memorandum signed by Petitioner and his counsel, confirming that counsel had received all discovery, and that Petitioner had discussed this matter with counsel, understood the reasons for the waiver, and agreed that it was in his best interest to waive his rights to pretrial motions. *Id.* Doc. No. 25.

On April 22, 2014, Petitioner and the United States entered into a plea agreement pursuant to which Petitioner would plead guilty to Counts 1 and 2 of the indictment, and the United States would dismiss Count 3. In the agreement, Petitioner affirmed his satisfaction with the performance of his attorney; acknowledged that his attorney had fully explored all issues raised by Petitioner; that he had discussed the terms and conditions of the plea agreement with his attorney and was in agreement with them; that he was pleading freely and voluntarily; and that no threats or promises had been made to influence his decision. *Id.* Doc. No. 29 at 11-12. The plea agreement also advised Petitioner of the maximum penalties he was facing. *Id.* at 4-5. On the same day, Petitioner appeared before the Court for a change of plea hearing, and was questioned about the terms of the plea agreement, including matters pertinent to Petitioner's current claims.

At the plea hearing, Petitioner represented that he had had a "full opportunity to review [his] charges and [his] case with [his] attorney." *Id.* Doc. No. 46 at 9. The Court also confirmed that Petitioner was satisfied with his attorney's performance:

| Court: | And have you had enough time to discuss not only your case but also this plea agreement with your attorney? |
|---|---|
| Petitioner: | Yes, ma'am. |
| Court: | And are you satisfied with his representation of you in this case? |
| Petitioner: | Yes, ma'am. |
| Court: | Is there anything you think your attorney should have done but didn't do in representing you? |
| Petitioner: | No. I think we did all right. |
| Court: | All right. Is there anything that you asked him to do that he refused to do? |
| Petitioner: | No. |
| Court: | And to the extent you had questions has he answered those questions for you? |
| Petitioner: | Yes, ma'am. |

*Id.*, Doc. No. 46 at 10-11.

Petitioner also acknowledged that he was aware of the contents of the plea agreement and had discussed them with his attorney:

| Court: | And did you review this plea agreement and discuss it with your attorney before you signed it? |
|---|---|
| Petitioner: | Yes, we did. |
| Court: | And to the extent you had questions was your attorney able to answer those questions for you? |
| Petitioner: | Yes, ma'am. |

| Court: | So between your own review of the plea agreement and your discussion of it with your attorney do you feel like you understand what's in this plea agreement? |
|---|---|
| Petitioner: | Yes, ma'am. |

*Id.* at 14-15.

Petitioner acknowledged that as part of a "binding plea agreement," he was "agreeing to accept a sentence within the applicable advisory sentencing guideline range that [the Court] may determine." He was further expressly advised that in the plea agreement, the parties had reached an agreement as to what they anticipated the guidelines calculations were going to be. *Id.* at 16. Petitioner was told that after the Court obtained the presentence report ("PSR") the Court would determine whether to accept the agreement to sentence Petitioner within the guideline range agreed to by the parties. *Id.* at 17. The Court then reviewed each step of the guidelines calculations contained in the plea agreement, including the parties' estimate that the total offense level would be 29. *Id.* at 17-21. Petitioner also acknowledged that, as set forth in the plea agreement, Petitioner's criminal history calculation would be left to the Court, but that at or before the sentencing, either party could challenge the criminal history calculation in the PSR. Petitioner represented to the Court that he had in fact discussed his criminal history with his attorney. *Id.* at 21.

The Court also explained to Petitioner that the Court was not bound by the parties' guidelines calculations, but that if the Court determined not to accept the parties' guidelines calculations and a sentence within that guidelines range, that Petitioner would be free at that time to withdraw his plea. *Id.* at 22-23. Petitioner advised the Court that

he understood, and that he had no question about any of that discussion. *Id.* at 23-24. The Court also explained the process related to the drafting and finalizing of the PSR, and the fact that Petitioner would have the right to file objections if he had any "objection to the information contained in the report or how the guidelines apply to the facts." *Id.* at 25. Again, Petitioner acknowledged that he understood.

Petitioner was also expressly advised by the Court of the maximum penalties that he could be facing, and he confirmed that he understood.

> Court: All right. Now, this plea agreement also sets out what the maximum penalties are for this offense, and those maximum penalties appear on pages 4 and 5 of this plea agreement.
>
> And with respect to Count 1 you understand that the maximum penalty is a term of imprisonment of not more than 20 years, a fine of not more than $1 million or both, and I must impose a period of supervised release of at least three years: Do you understand that?
>
> Petitioner: Yes, ma'am.
>
> Court: And with respect to Count 2 the maximum penalty is a term of imprisonment of not more than 10 years, a fine of not more than $250,000 or both, and I may also impose a period of supervised release of not more than three years: Do you understand that?
>
> Petitioner: Yes, ma'am.
>
> Court: All right. And so you understand that I could impose a maximum fine or the maximum penalty or both in connection with these offenses?
>
> Petitioner: Yes.
>
> . . .
>
> Court: And so you understand that by pleading guilty you are subjecting yourself to all of those maximum penalties?

| | |
|---|---|
| Petitioner: | Yes, ma'am. |

*Id.* at 27-28.

The Court also confirmed with Petitioner, multiple times, that his plea was freely and voluntarily made, and that there had been no threats or promises made to him to induce his change of plea:

| | |
|---|---|
| Court: | All right. So apart from what we have discussed here, sir, has anybody made a promise to you as to a particular sentence that you should expect to receive in this case? |
| Petitioner: | No, ma'am. |
| Court: | All right. Because I need to make it really clear to you if anybody has made such a promise to you that's a promise they can't keep: Do you understand? |
| Petitioner: | All right. |

*Id.* at 26.

| | |
|---|---|
| Court: | But can you tell me, sir, other than what is contained in this plea agreement has anybody made promises to you to get you to plead guilty in this case? |
| Petitioner: | No, ma'am. |
| Court: | Has anybody offered you anything or given you anything to get you to plead guilty? |
| Petitioner: | No, ma'am. |
| Court: | Has anybody threatened you or tried to force you to plead guilty? |
| Petitioner: | No, ma'am. |

*Id.* at 36.

Finally, the Court confirmed that the plea agreement was the third plea offer made, and Petitioner had accepted that one as being in his best interest.

> Prosecutor: Just in case it becomes a problem in the future, I would ask [Defense counsel] if, in fact, he had discussed with [Petitioner] all those previous plea negotiations and scenarios with [Petitioner], that he, in fact, chose to accept this one as being in his best interest?
>
> Court: [Defense counsel], have you, in fact, previously received two prior plea offers from the prosecutor in this matter?
>
> Defense Counsel: [Petitioner], you and I went over -- the first plea offer I rejected, and the second plea offer you and I went over both plea offers, the one with the numbers in it and the one that was rejected completely before today; right?
>
> Petitioner: Yes.
>
> Defense Counsel: And those documents actually had much of the same language as this document, but they had differences; right?
>
> Petitioner: Yes.
>
> Defense Counsel: And we talked about the guidelines and how that might work and what the Judge might consider at sentencing, and then we had the plea agreement that you actually signed today, and that's the one you chose to sign. Do you understand the differences between that and the earlier ones we talked about?
>
> Petitioner: Yes.

*Id.* at 45-46.

On June 16, 2014, the disclosure copy of the PSR was filed, and on July 14, 2014, Petitioner's final PSR was filed. Consistent with the calculations in the plea agreement, the report determined that the attempt to manufacture charge had a Base Offense Level of

32, to which two levels had to be added because Petitioner possessed a firearm, bringing the Base Offense Level for the two counts to 34. Three levels would be deducted pursuant to Guidelines § 3E1.1(1)(a)-(b) because Petitioner accepted responsibility and timely notified the government of his intent to plead guilty, bringing his Total Offense Level to 31. The report also determined that Petitioner's extensive juvenile criminal history gave him a total of 15 criminal history points, placing him in Criminal History Category VI. Based on both his Total Offense Level and Criminal History Category, the PSR found Petitioner's guideline range to be 188 to 235 months. Also consistent with the plea agreement, however, the PSR noted that a two-level reduction in the Base Offense Level, in contemplation of the anticipated amendment to the guidelines, would bring the Total Offense Level to 29, which would result in a guideline range of 151-188 months. The report stated that the maximum terms of imprisonment were 20 years for Count 1 and 10 years for Count 2. *Id.* Doc. No. 35 at 6-14, 18, 21-22.

As noted in the PSR, the plea agreement entered into by the parties significantly reduced Petitioner's possible sentence in that the government dismissed Count 3, which would have imposed a consecutive sentence of at least five years. Further, the United States did not file an enhancement based upon Petitioner's prior drug convictions, which would have resulted in a maximum term of imprisonment of 30 years; and the agreement did not address Petitioner's reckless endangerment during his high speed flight from police, which would have added two levels to his Total Offense Level and brought the guideline imprisonment range to 235 to 293 months. *Id.* at 19.

No objection to the PSR was made by either party, and on July 21, 2014, Petitioner's sentencing hearing was held. The Court again reviewed each of the guidelines calculations that resulted in a Total Offense Level to 29. The advisory guideline range thus came to 151 to 188 months. *Id.* Doc. No. 47 at 7-9.

At the sentencing hearing, Petitioner's counsel confirmed that he had reviewed the final PSR with his client, and the parties confirmed that neither party had any objections to the PSR. The Court advised the parties that it would accept and abide by the binding plea agreement. Consistent with that agreement, Petitioner was sentenced at level 29, and received a sentence to the low end of the advisory guidelines range, 151 months on Count I and 120 months on Count 2, with the sentences to run concurrently. *Id.* at 20.

## **PETITIONER'S CLAIMS**

In the present action, Petitioner argues that his trial counsel rendered ineffective assistance by failing to provide Petitioner all of the discovery materials produced by the government. He claims that there were numerous reports listed as part of the discovery that he never got the opportunity to review. Petitioner also claims that his counsel made multiple promises to bring these reports, but that he never did so. Additionally, he claims that his counsel never brought videos of the interviews of Petitioner to watch, which he allegedly requested because he had been under the influence when the interviews were conducted and he did not recall much about them.

Petitioner further contends that his counsel was ineffective for failing to inform him what rights he was giving up when he waived his pretrial motions. Petitioner asserts that he had issues that he wished to raise at an evidentiary hearing but after waiving

pretrial motions he was unable to do so.  Petitioner claims that his counsel misrepresented to him that he would only be waiving his presentence interview, not his evidentiary hearing, and that it was only later that he found out that his interview would not take place until after he entered a guilty plea and that it did not involve an in-court appearance.  Petitioner alleges his counsel told him that if he did not waive his rights to pretrial motions, or if he objected in any way, he would be viewed by the prosecutor as being uncooperative, which would result in his receiving a greater sentence.

Finally, Petitioner claims that his trial counsel was ineffective by advising him to sign the April 22, 2014 plea agreement.  Petitioner alleges that he had decided to agree to a prior plea agreement proposed by the government, but that his counsel advised him to sign a new one on the day of the change of plea hearing to receive a Base Offense Level of 29.  Petitioner admits that counsel told him that the new agreement would void the prior one, but claims that his counsel told him that it would leave no possibility of his receiving more than 120 months.  Petitioner argues that he was induced to sign the operative plea agreement by his counsel's promise, and that this promise was not kept as Petitioner ultimately received a sentence of 151 months.

Petitioner admits that he never raised any of these claims in any proceedings before the Court, but claims that he discussed each issue with his counsel, who advised him that raising these claims would result in Petitioner losing the three-level reduction in his Base Offense Level provided for in the executed plea agreement, and could even lead to his sentence being enhanced because he was disrupting the flow of the court process.  (Case No. 1:14CV176 AGF, Doc. No. 1 at 9-10.)  In addition to any relief the Court may

pretrial motions he was unable to do so.  Petitioner claims that his counsel misrepresented to him that he would only be waiving his presentence interview, not his evidentiary hearing, and that it was only later that he found out that his interview would not take place until after he entered a guilty plea and that it did not involve an in-court appearance.  Petitioner alleges his counsel told him that if he did not waive his rights to pretrial motions, or if he objected in any way, he would be viewed by the prosecutor as being uncooperative, which would result in his receiving a greater sentence.

Finally, Petitioner claims that his trial counsel was ineffective by advising him to sign the April 22, 2014 plea agreement.  Petitioner alleges that he had decided to agree to a prior plea agreement proposed by the government, but that his counsel advised him to sign a new one on the day of the change of plea hearing to receive a Base Offense Level of 29.  Petitioner admits that counsel told him that the new agreement would void the prior one, but claims that his counsel told him that it would leave no possibility of his receiving more than 120 months.  Petitioner argues that he was induced to sign the operative plea agreement by his counsel's promise, and that this promise was not kept as Petitioner ultimately received a sentence of 151 months.

Petitioner admits that he never raised any of these claims in any proceedings before the Court, but claims that he discussed each issue with his counsel, who advised him that raising these claims would result in Petitioner losing the three-level reduction in his Base Offense Level provided for in the executed plea agreement, and could even lead to his sentence being enhanced because he was disrupting the flow of the court process.  (Case No. 1:14CV176 AGF, Doc. No. 1 at 9-10.)  In addition to any relief the Court may

pretrial motions he was unable to do so.  Petitioner claims that his counsel misrepresented to him that he would only be waiving his presentence interview, not his evidentiary hearing, and that it was only later that he found out that his interview would not take place until after he entered a guilty plea and that it did not involve an in-court appearance.  Petitioner alleges his counsel told him that if he did not waive his rights to pretrial motions, or if he objected in any way, he would be viewed by the prosecutor as being uncooperative, which would result in his receiving a greater sentence.

Finally, Petitioner claims that his trial counsel was ineffective by advising him to sign the April 22, 2014 plea agreement.  Petitioner alleges that he had decided to agree to a prior plea agreement proposed by the government, but that his counsel advised him to sign a new one on the day of the change of plea hearing to receive a Base Offense Level of 29.  Petitioner admits that counsel told him that the new agreement would void the prior one, but claims that his counsel told him that it would leave no possibility of his receiving more than 120 months.  Petitioner argues that he was induced to sign the operative plea agreement by his counsel's promise, and that this promise was not kept as Petitioner ultimately received a sentence of 151 months.

Petitioner admits that he never raised any of these claims in any proceedings before the Court, but claims that he discussed each issue with his counsel, who advised him that raising these claims would result in Petitioner losing the three-level reduction in his Base Offense Level provided for in the executed plea agreement, and could even lead to his sentence being enhanced because he was disrupting the flow of the court process.  (Case No. 1:14CV176 AGF, Doc. No. 1 at 9-10.)  In addition to any relief the Court may

grant, Petitioner prays that this Court reduce his sentence on Count 1 by 24-31 months. *Id.* at 12.

## **DISCUSSION**

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668, 686 (1984), and this right extends to the plea-bargaining process, *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012).

To prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel's performance "fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 132 S. Ct. at 1384 (*citing Hill v. Lockhart*, 474 U.S. 52 (1985)). "Failure to establish either prong is fatal to a claim of ineffective assistance." *Morelos v. United States*, 709 F.3d 1246, 1250 (8th Cir. 2013).

To satisfy the performance prong, a petitioner must show that counsel's representation was not within "the range of competence demanded by attorneys in criminal cases." *Watson v. United States*, 682 F.3d 740, 743 (8th Cir. 2012). In order to satisfy the prejudice prong of the *Strickland* test when evaluating a claim that ineffective assistance led to the improvident acceptance of a guilty plea, a petitioner "must establish

a reasonable probability that he would have exercised his right to a trial but for counsel's ineffectiveness." *Watson*, 682 F.3d at 745; *see also Covington v. United States*, 739 F.3d 1087, 1090 (8th Cir. 2014) (same).

The Court must normally hold an evidentiary hearing to consider claims in a § 2255 motion, but "does not err in dismissing a movant's section 2255 motion without a hearing if (1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir. 2006) (internal quotation omitted); *cf. United States v. Gilkes*, No. 13–3646, 2015 WL 689507 (8th Cir. Feb. 19, 2015) (remanding a § 2255 case where the district court did not hold an evidentiary hearing on the petitioner's claim that his counsel was ineffective for failing to seek "safety-valve" relief, when the record was unclear as to whether the petitioner met the criteria for such relief).

Here, all of Petitioner's claims are refuted by the record. Petitioner's statements under oath at his pretrial waiver hearing that he had reviewed all of the government's discovery with his counsel, as well as his statement under oath at the time of his plea that there was nothing that he had asked his attorney to do which he did not do, precludes his claim that his counsel was ineffective for failing to provide Petitioner with the discovery against him. *See United States v. White*, No. CR04–4113–MWB, 2009 WL 500611, at *7 (N.D. Iowa Feb. 26, 2009). Even if the Court ignored the contrary evidence on the record and accepted Petitioner's assertion as true, he would still not be entitled to relief because

he has alleged no prejudice stemming from his claimed inability to review the discovery. *See York v. United States*, No. 4:13CV796 JCH, 2014 WL 2968814, at *5 (E.D. Mo. July 1, 2014).

Likewise, Petitioner's statements under oath at his pretrial waiver hearing that no promises or threats had been made to induce him to waive pretrial motions and that he understood what rights he was waiving, as well as the Magistrate Judge's explanation that Petitioner was waiving his right to an evidentiary hearing, precludes Petitioner's claim that counsel was ineffective for failing to inform him what rights he was waiving. The Magistrate Judge made plain at the hearing that what was at issue was Petitioner's right to file pretrial motions, such as a motion to suppress evidence, and his right to have a hearing on such motions. Petitioner acknowledged his understanding, under oath, and cannot now be heard to contend otherwise. *See Boice v. United States*, No. 4:11CV701 JCH, 2014 WL 626211, at *3 (E.D. Mo. Feb. 17, 2014) (denying a section 2255 ineffective assistance of counsel claim for advising/allowing petitioner to waive her pretrial motions because she had signed a pretrial motion waiver and stated at the hearing that she had reviewed the discovery against her and nonetheless wished to waive her right to file pretrial motions).

Finally, Petitioner's claims of ineffective assistance of counsel on matters related to his sentence fail. Petitioner stated under oath at his change of plea hearing that he understood the sentencing guidelines range agreed to by the parties would be binding, and if rejected by the Court, that he would have the ability to withdraw his plea. He further affirmed that no one had made a promise to him as to the sentence he would

receive, and that he understood that no one would be able to keep such a promise had one been made. He also stated that he understood the differences between the three plea agreements which had been negotiated, and that he chose the one most beneficial to him. Taken together, these statements preclude Petitioner's claim that he pled guilty due to his counsel's promise that Petitioner would only be sentenced to 120 months. *See Sartor v. United States*, No. 4:12CV448 JCH, 2013 WL 2457185, at *4-5 (E.D. Mo. June 6, 2013) (denying a section 2255 claim that petitioner's counsel was ineffective for not fully explaining a plea agreement when he stated in court that he understood its provisions).

Further, counsel reviewed the PSR, which contained the guideline range, with Petitioner prior to the sentencing. But Petitioner never objected at sentencing to the guideline range adopted by the Court, or to the 151 month sentence. Nor did he attempt to withdraw his plea at any time.

Petitioner's claims are also foreclosed by the fact that he was fully advised of the maximum penalty both in his plea agreement and at his plea. *See United States v. Quiroga*, 554 F.3d 1150, 1155 (8th Cir. 2009) (noting that there is "abundant circuit precedent holding that inaccurate advice of counsel about the sentencing guidelines . . . does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range"); *Sangster v. United States*, No. 4:08CV1841 CDP, 2011 WL 5374664, at *5-6 (E.D. Mo. Nov. 8, 2011) (denying a section 2255 claim for ineffective assistance regarding counsel's allegedly inaccurate sentencing predictions when he was fully informed of the sentencing range, stated he understood, and did not

object to either the range or the ultimate sentence).

As Petitioner fails to meet the first *Strickland* prong, the Court need not address the second. *See Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000). However, even if the Court were to accept Petitioner's assertion that counsel rendered ineffective assistance by misrepresenting the sentence that Petitioner would receive, Petitioner has still made no showing of the required *Hill* prejudice, "that he would not have pled guilty and would have insisted on going to trial absent his attorney's misrepresentations." *See Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1104-05 (8th Cir. 2011) (finding that petitioner had a "high hurdle to clear" to show prejudice on his ineffective assistance claim when counsel allegedly promised the petitioner a sentence he would receive under a plea agreement which was below the guideline range and would have required a downward departure by the court) (citation omitted).

To the extent Petitioner is asserting that he would not have agreed to the final plea agreement, but rather would have proceeded with the second plea agreement, he still cannot show prejudice. In his Petition, Petitioner states that the second agreement provided for an open plea. As discussed in the PSR, pursuant to an open plea, Petitioner would have been facing a much higher sentencing range.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Kyle Brashear's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is **DENIED**. (Doc. No. 1.)

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Petitioner has not made a substantial showing of the denial of a federal constitutional right as required by 28 U.S.C. § 2253(c)(2).

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 24th day of March, 2015.